WILHEM WILLINK, junior, v. The MORRIS CANAL AND BANKING COMPANY and others.

| 4 | 377 |
| 59L | 32 |

| 4 | 377 |
| 55 | 397 |
| 55 | 405 |

| 4 | 377 |
| 57 | 362 |

The undeniable general rule in equity is, that a nominal trustee cannot bring a suit in his own name, but must join with him the names of the persons having the beneficial interest.

32*

[Willink v. The Morris Canal and Banking Co.]

But the court will, in its discretion, dispense with a strict adherence to the rule, where by complying with it, great inconvenience or unnecessary expense would be incurred.

Where a banker negociated in the city of Amsterdam a loan of seven hundred and fifty thousand dollars, for the Morris Canal and Banking Company, and the company, to secure the repayment of the loan, executed a mortgage to the said banker, "being the agent and trustee of the several subscribers to the loan," reciting, that the loan was to be advanced by the subscribers thereto according to the sums subscribed by each of them respectively, and that the principal and interest thereby secured should be paid in Amsterdam to the said banker, "*representing the said lenders*, or to his successor or successors in the said trust, or to such person or persons as he or they might substitute or appoint for that purpose;"—*Held*, that the mortgagee might file a bill to foreclose the mortgage in his own name, without making his *cestui que trusts* parties.

The case is excepted out of the general rule, on the ground of the great inconvenience to which a compliance with it would subject the complainant.

The true additional parties, if any, would be the owners of the stock at the time of filing the bill. To require them to be made parties would be almost a denial of the aid of the court,

Nor is it necessary that the complainant should state upon the face of his bill, in order to warrant the filing of the bill in his own name, that the *cestui que trusts* are so numerous that they cannot, without great inconvenience, be brought before the court. The character of the transaction sufficiently appears upon the face of the mortgage, as disclosed in the bill.

*Held*, also, that it was a part of the original contract between the mortgagors and mortgagee, that the lenders should in this transaction be represented by the mortgagee, and by him alone. The court will not, therefore, oblige him, in seeking to recover the money, in the face of this agreement, to come into court in the names of all the lenders,

The assignee of a bankrupt or an insolvent is a necessary party to a bill affecting the property of such bankrupt or insolvent, because the property by the assignment passes to and vests in the assignee.

Are the receivers, appointed under the act, entitled, "An act to prevent frauds by incorporated companies," necessary parties to a bill affecting the property of the company of which they are appointed the receivers?—*Quere.*

The property of the company does not vest in the receivers, nor does the appointment of receivers necessarily put an end to the corporation.

The *title* to the property is not changed by the appointment of the receivers. A power only is delegated to the receivers to take charge of it and sell it.

It seems that the receivers may sue or defend in the name of the corporation.

Where the receivers were appointed after a decree *pro confesso* had been taken,

[Willink v. The Morris Canal and Banking Co.]

against the corporation, by which the right of the complainant to recover was established, *Held*, that the receivers were not necessary parties, and that an objection made by a third party to the bill for want of proper parties on that ground, would not be sustained.

If the receivers should ask to be substituted as defendants, with the view of setting up a defence, the court would permit them to do so at any stage of the proceedings.

Upon a bill of foreclosure, a subsequent mortgagee upon the same premises, though a mere trustee, is a necessary party. It is not enough that the *cestui que trusts* are before the court.

But where the property subject to the subsequent mortgage was small, and the *cestui que trusts* were before the court, an objection for want of parties, on the ground that the trustee was not a party, was overruled, inasmuch as the right of the trustee to redeem would not be bound by the decree.

By the act incorporating the Morris Canal and Banking Company, they were authorized to construct a canal to connect the waters of the Delaware with the waters of the Passaic. By a subsequent act, the company were authorized " to continue the Morris canal to the waters of the Hudson, at or near Jersey City." By an act passed January twenty-eighth, eighteen hundred and thirty, the company were authorized to borrow money, and for securing the due payment thereof, to hypothecate by way of trust, mortgage or otherwise, " the Morris canal, with all its privileges, appendages and appertenances, and all the property and chartered rights of the said company." The company having made a loan, executed a mortgage, by authority of the said act, " upon all and singular the Morris canal, so called, being the canal authorized by the laws of the state of New-Jersey, as the said canal has been laid out, through the several counties of Warren, Sussex, Morris, Essex and Bergen, in the said state of New-Jersey, and being now in a course of completion from the Delaware to the Hudson river ; together with all and singular the dams, aqueducts, locks, planes, culverts, bridges, towing-paths, embankments, basins, wharves, docks, waters, water-courses, machinery, privileges, appendages and appertenances thereto belonging or appertaining." At the time of the execution of the mortgage, the canal had not been constructed from the Passaic to the Hudson, nor had the land been purchased upon which the canal was subsequently constructed. The route had been surveyed, though a part of the route was subsequently varied.

*Held*, That the said mortgage covered the entire canal from the Delaware to the Hudson, and also the pier at Jersey City, which was constructed upon land purchased after the execution of the mortgage.

*Held, also*, That the feeder of the canal passed by the said mortgage as part and parcel thereof.

If a subsequent mortgagee, or his agent, had notice of the existence of a mortgage from the Delaware to the Passaic, it was sufficient to put him up-

[Willink v. The Morris Canal and Banking Co.]

on inquiry, and the first mortgagee will be entitled to priority upon the whole canal, although his mortgage was not duly acknowledged or proved and recorded.

*Held,* That the legislature, by giving authority to the company to execute a mortgage, intended to invest the mortgagee with all the power and authority incident to an instrument of that kind, and that although no express authority is given by the statute to sell the premises by virtue of the said mortgage, a power of sale is to be inferred from the authority to mortgage.

THE complainant, on the twentieth day of October, eighteen hundred and forty-one, filed his bill of complaint for foreclosure, sale, &c., on a mortgage made and executed to him, by "The Morris Canal and Banking Company," an incorporated company of the state of New-Jersey.

The bill sets out the original act incorporating the said company, passed the thirty-first day of December, eighteen hundred and twenty-four, and the several supplements thereto, and more particularly the supplement passed the twenty-eighth of January, eighteen hundred and thirty, entitled, "An act to amend an act, entitled, 'An act to incorporate a company to form an artificial navigation between the Passaic and Delaware rivers, passed the thirty-first day of December, eighteen hundred and twenty-four,' and for other purposes."

The bill then states, that after the passage of the said last mentioned act, the complainant, by the request and in pursuance of the authority and instructions of the board of directors of the said The Morris Canal and Banking Company, did in behalf of the said company, and for their use, negociate a loan in the city of Amsterdam aforesaid, of seven hundred and fifty thousand dollars, which sum was handed or paid over to the said company; and the said The Morris Canal and Banking Company, for the purpose of securing the re-payment of the said capital sum of seven hundred and fifty thousand dollars, with interest on the same, made and executed in due form of law, and delivered to the complainant, their certain indenture of mortgage, bearing date the twenty-ninth day of March, in the year of our Lord one thousand eight hundred and thirty,

and made between the said The Morris Canal and Banking Company, of the first part, and the complainant, by the name and description of Wilhem Willink, junior, of the city of Amsterdam, in the kingdom of the Netherlands, merchant, being the agent and trustee of the several subscribers to the loan therein after mentioned, of the second part; and in and by the said indenture of mortgage it is recited and set forth, that whereas the complainant, in pursuance of the authority and instruction of the board of directors of the Morris Canal and Banking Company, had on behalf of the said company lately negociated and concluded in the said city of Amsterdam, an agreement for a loan of seven hundred and fifty thousand dollars, to be advanced by the subscribers thereto according to the sums subscribed by each of them respectively, by the conditions of which agreement, the said loan was to bear interest at the rate of five per centum per annum, to be paid half-yearly, that is to say, on the first day of July and on the first day of January in each year until its reimbursement; and the capital sum to be reimbursed by five equal annual installments, commencing the first day of January, in the year of our Lord one thousand eight hundred and forty-six; and that the said interest, and also the said installments of principal, should be paid in Amsterdam to the complainant, representing the said lenders, or to his successor or successors in the said trust, or to such person or persons as he or they might substitute or appoint for that purpose; and that the payment thereof should be secured by the pledge and hypothecation of the Morris Canal belonging to the said company, with its appendages and appertenances, and the annual revenues, chartered rights and property of the said company therein after mentioned; and that the said conditions had been approved and confirmed by the board of directors of the said company; and thereupon the said indenture of mortgage witnessed that the said "The Morris Canal and Banking Company," for the purpose of securing the reimbursement of the said capital sum, and the due payment of the said interest, according to the conditions of the said agreement, and in consider-

ation of the sum of one dollar, to them in hand paid by the complainant, the receipt whereof was thereby acknowledged, and in pursuance of the power and authority for that purpose given and granted to them by the laws of the said state of New-Jersey, had granted, bargained, sold, assigned, transferred and set over, and by the said indenture of mortgage did grant, bargain, sell, assign, transfer and set over unto the complainant, his heirs, executors, administrators, successors, substitutes and assigns, for the benefit of the said lenders, all and singular the said Morris Canal, so called, being the canal authorized by the laws of the state of New-Jersey, as the canal had been laid out, through the several counties of Warren, Sussex, Morris, Essex and Bergen, in the said state of New-Jersey, and being then in a course of completion from the Delaware to the Hudson river, together with all and singular the dams, aqueducts, locks, planes, culverts, bridges, towing-paths, embankments, basins, wharves, docks, waters, water-courses, machinery, privileges, appendages and appertenances thereto belonging or appertaining, and also the chartered rights of the said company, and all the tolls, income, revenues and profits accruing, or which should or might at any time thereafter accrue or arise from the said canal; and also all the lands, tenements and other properties of them The Morris Canal and Banking Company, whatsoever and wheresoever, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof, and all the estate, right, title, interest, property, claim and demand, as well at law as in equity, of them The Morris Canal and Banking Company, of, in and to the same, and every part and parcel thereof; to have and to hold all and singular the said granted and assigned premises unto the complainant, his heirs, executors, administrators, successors, substitutes and assigns, to his and their proper use and benefit, as fully and effectually, to all intents and purposes, as they The Morris Canal and Banking Company were seized, possessed or entitled unto, or could in any manner grant, convey, assign and transfer the same—upon trust, nevertheless, for the benefit and

[Willink v. The Morris Canal and Banking Co.]

behoof of the several lenders, their respective executors, administrators and assigns, in proportion to the sums by them respectively advanced, or to be advanced, on account of the said loan ; Provided always, and the said indenture of mortgage was and is upon the condition, that if the said The Morris Canal and Banking Company, or their successors, should well and truly pay to the complainant, his executors, administrators and assigns, representing the said lenders, or to his successor or successors in that trust, or to such person or persons as he or they should substitute and appoint for the receipt of the same, the aforesaid capital sum of seven hundred and fifty thousand dollars, by five equal annual installments, commencing on the first day of January, in the year of our Lord one thousand eight hundred and forty-six, and also the annual interest on so much of the said capital sum as should from time to time remain unextinguished and not reimbursed, to be computed at the rate of five per centum per annum, and to be paid half-yearly, that is to say, on the first day of July next succeeding the date of said indenture of mortgage, and half-yearly thereafter ; such reimbursement of said capital sum, and such half-yearly payments of interest, to be made in the said city of Amsterdam ; then that the said indenture of mortgage, and the estate thereby granted, and every act, matter and thing therein contained, should cease and be null and void to all intents and purposes ; and the said The Morris Canal and Banking Company, for themselves and their successors, by the said indenture of mortgage, did covenant, promise and agree to and with the complainant, his executors, administrators, substitutes and assigns, representing the said lenders, that they the said Morris Canal and Banking Company, and their successors, should and would well and truly reimburse, pay and discharge the said principal sum and interest, at the times and in the manner in the said indenture of mortgage specified, and herein before set forth ; and it was also by the said indenture of mortgage expressly declared and agreed by and between the parties thereto, that if default should at any time be made in the payment of the said capital sum and in-

terest, or either of them, or any part thereof, according to the true intent and meaning of the said indenture of mortgage, then and in that case, and as often as such default should be made, it should be lawful for the complainant, his heirs, executors, substitutes or assigns, representing the said lenders, or such person or persons as shall or may have succeeded to the said trust, to enter upon and to have, hold, use and enjoy, the said canal, with its appendages and appertenances, and all and every of the premises granted and assigned by the said indenture of mortgage, and to take and receive the revenues, tolls, rents, issues and profits thereof, in as full and ample a manner, to all intents and purposes, as they the said Morris Canal and Banking Company, or the stockholders thereof, could or might, have, hold, use, enjoy, take and receive the same.

That on the twenty-ninth day of March, in the year of our Lord one thousand eight hundred and thirty, before William H. Maxwell, a commissioner to take the acknowledgment of deeds, &c., personally appeared Cadwallader D. Colden, with whom the said commissioner was personally acquainted, and who was known to said commissioner to be the president of the corporation styled "The Morris Canal and Banking Company," the grantors named in the said indenture, and who as such president is a subscribing witness to the execution of the said indenture; and the said commissioner having first made known to him the contents of said indenture, and the said Cadwallader D. Colden being by said commissioner duly sworn, did depose and say, that the seal affixed to said indenture was the corporate seal of the said company, that the same was so affixed thereto by the authority and order of the board of directors of the said company, and that he as such president subscribed his name as a witness to such execution.

That on the —— day of March, in the year of our Lord one thousand eight hundred and thirty, the said indenture of mortgage was duly entered of record in the office of the secretary of state of the state of New-Jersey.

That the interest on the said capital sum of seven hundred

and fifty thousand dollars, mentioned in the said indenture of mortgage, and intended to be secured thereby, has been paid by the said "The Morris Canal and Banking Company" up to the first day of January, in the year of our Lord one thousand eight hundred and forty-one; that one half-year's interest on the said capital sum of money became due and payable on the first day of July last, according to the conditions of the said indenture of mortgage; that the same amounts to the sum of eighteen thousand seven hundred and fifty dollars; that the same, or any part thereof, has not been paid or satisfied; that the whole amount of the said capital sum of seven hundred and fifty thousand dollars, with interest for the same from the first day of January, eighteen hundred and forty-one, remains unpaid and unsatisfied.

That the said The Morris Canal and Banking Company have at all times possessed and enjoyed, and that the said company do still possess and enjoy, all and singular the said canal and the said mortgaged lands and premises, appendages and appertenances, and chartered rights of said company, and that they have always received, and still do receive, the rents, issues and profits thereof.

That the complainant has been informed and believes, that the said The Morris Canal and Banking Company, by their certain indenture of mortgage, bearing date the seventh day of October, eighteen hundred and forty, mortgaged to the State of Indiana, one of the United States of America, all the several tracts or parcels of land and premises, situated, lying and being in the counties of Warren, Sussex, Morris, Passaic, Essex and Hudson, constituting the Morris Canal from the Delaware river to the Hudson river, together with all the lands, locks, inclined planes, docks, wharves and appertenances thereunto belonging, and being part of the premises mortgaged to the complainants as aforesaid; which said mortgage appears to be conditioned for the payment of nine hundred and sixty thousand dollars, and for the payment of certain other sums of money, and for the return of certain stocks, and for the delivery of a certain quan-

33

tity of iron, as in said mortgage mentioned and set forth ; but the complainant insists, and charges, that the said indenture of mortgage to the State of Indiana, is subsequent in date and registry to the complainant's mortgage, and that the complainant's mortgage is entitled to priority in payment over the same.

That the complainant has been informed and believes, that the said " The Morris Canal and Banking Company have executed and delivered to the State of Indiana a certain other mortgage, bearing date on or about the sixth day of October, in the year eighteen hundred and forty, which mortgage purports to be of and for the Morris Canal from Newark to Jersey City, with the appertenances, lands, docks and wharves, and being also for part of the premises mortgaged to the complainant, as aforesaid, and is conditioned for the delivery by the said Morris Canal and Banking Company to the said State of Indiana, of one hundred and ninety thousand dollars of the five per cent Indiana sterling bonds, according to contract between the parties ; that is to say, forty thousand dollars on the first day of January, eighteen hundred and forty-one ; fifty thousand dollars on the first day of July, eighteen hundred and for-one ; fifty thousand dollars on the first day of January, eighteen hundred and forty-two ; and fifty thousand dollars on the first day of July, eighteen hundred and forty-two ; but the complainant insists, that the said last mentioned mortgage is subsequent in date and registry to the complainant's said mortgage, and that the complainant's mortgage is entitled to priority in payment over the same."

The bill then sets out several judgments against the said " The Morris Canal and Banking Company ;" one in the supreme court, of judicature of the state of New-Jersey, in the term of September, eighteen hundred and forty-one, for eleven thousand dollars and upwards, besides costs, in favor of William Curtis Noyes, Thomas G. Talmadge and Henry Yates ; a judgment in the said supreme court against the said company, in the same term of September, in favor of Abraham Richards and

David Selden, for the sum of thirty-nine thousand three hundred and ninety-five dollars and fifteen cents, or thereabouts, besides costs of said suit, and which remain uncancelled of record.

The prayer of the bill is, that the said, " The Morris Canal and Banking Company " may be decreed to pay to the complainant, as such trustee, as aforesaid, the said principal sum of seven hundred and fifty thousand dollars, mentioned in and intended to be secured by his said indenture of mortgage, and also the said sum of eighteen thousand seven hundred and fifty dollars of interest money due on the said principal sum as aforesaid, with the difference in the rate of exchange between the city of New-York and the city of Amsterdam, where the said sums are payable, and all interest moneys to grow due on the aforesaid principal sum, with the difference of exchange as aforesaid, together with all the complainant's costs and charges in this behalf sustained, by a short day to be appointed by this honorable court, and in default thereof that the said defendants, and each of them, and all persons claiming or to claim under them or either of them, may be foreclosed of and from all equity of redemption and claim of, in and to all and singular the said mortgaged premises mentioned and contained in the complainant's said indenture of mortgage, and every part and parcel thereof, with the appertenances, and may deliver over unto the complainant all deeds, demises, writings, books, records and archives relating to or concerning the same, and that all and singular the said canal of the Morris Canal and Banking Company, together with all and singular the dams, aqueducts, locks, planes, culverts, bridges, towing-paths, embankments, basins, wharves, docks, waters, water-courses, machinery, privileges, appendages and appertenances thereto belonging or appertaining, and all the chartered rights of the said company, and all the tolls, income, revenues and profits accruing, or which at any time hereafter shall or may accrue or arise from the said canal; and also all the lands, tenements and other properties of them the said Morris Canal and Banking Company, whatsoever

and wheresoever, and whereof the said company was seized or possessed on the said twenty-ninth day of March, eighteen hundred and thirty; the time of the date and execution of the complainant's said indenture of mortgage, and mentioned and contained in or comprehended thereby, may by the order and decree of this court be sold, and out of the moneys arising from a sale thereof the complainant may be paid for the benefit of the aforesaid lenders thereof, the aforesaid capital sum of seven hundred and fifty thousand dollars, mentioned in and intended to be secured by the complainant's aforesaid indenture of mortgage, and also the said sum of eighteen thousand seven hundred and fifty dollars now due and unpaid for interest on the said capital sum, as aforesaid, and all the interest money hereafter to grow due on the said capital sum, with the difference in the rate of exchange, as aforesaid, together with all the complainant's costs and charges in this behalf sustained, and that the complainant may have such other and further relief in the premises as shall be agreeable to equity and good conscience.

The complainant took a decree *pro confesso*, bearing date the twenty-ninth day of January, eighteen hundred and forty-two, against all the defendants except the said State of Indiana.

On the twelfth day of July, eighteen hundred and forty-two, the State of Indiana filed an answer to the complainant's bill.

The answer admits the existence of a supposed indenture of mortgage, purporting to be made by the Morris Canal and Banking Company to the complainant, as set out in his bill of complaint, but insist, by way of defence, that the said mortgage is usurious and void; that if valid, the complainant, being a mere trustee, cannot maintain a suit thereon in his own name, but must unite with him his *cestui que trusts*. That the complainant's mortgage is a lien only upon that part of the canal between the city of Newark and the river Delaware, and that

[Willink v. The Morris Canal and Banking Co.]

that part of the canal lying between the city of Newark and Jersey City, with the docks, wharves and piers connected therewith, were constructed, and the land purchased, after the date of the complainant's mortgage, and were not included in or covered by the same. That the feeder of the said canal, extending about three miles in length, from Ryerson's pond to the canal at Pompton, was excavated, and the titles to the lands over which the said feeder runs were purchased, after the date of the complainant's mortgage, and that the said mortgage is no lien thereon.

The answer also sets out various mortgages executed by the Morris Canal and Banking Company to the said defendants, upon the canal and its appendages, which it insists are valid liens upon the entire work, and are the first incumbrances upon that part of the canal between Newark and Jersey City, with its wharves, docks and piers, and also upon the Pompton feeder. Admits the several judgments stated in the bill, but insists that the defendants' mortgages are entitled to priority over the said judgments. Denies all fraud, &c.

To this answer the complainant filed his replication in the usual form.

On the eleventh of August, eighteen hundred and forty-two, the complainant entered the usual rule to close testimony. No testimony was taken by either party within the time limited by the said rule.

At October term, eighteen hundred and forty-two, the agent of the State of Indiana presented a petition for leave to file a supplemental answer, in order to set forth certain facts to establish usury in the complainant's mortgage, which were unknown to the defendant at the time of filing the answer; and also for further time to take testimony. The court, after argument, allowed fifty days from the time for the examination of witnesses touching the matters set out in the answer, excepting such parts thereof as relate to the usury therein set forth, but denied the remaining prayer of the petition.

33*

[Willink v. The Morris Canal and Banking Co.]

Depositions having been taken by both parties, the cause came on for final hearing at July term, eighteen hundred and forty-three, upon bill, answer, replication and proofs.

*A. Whitehead, David B. Ogden* and *Vroom,* for complainant.

*B. Williamson, H. W. Green* and *I. H. Williamson,* for defendants.

The counsel of the defendants objected to the hearing for want of proper parties to the bill. They insisted,

1. That the *cestui que trusts* of the complainant should have been made parties.

6 *Mad.* 144, 228; *Prec. in Chan.* 275; 1 *Ball and B.* 180; 2 *John. Chan.* 238; 3 *Paige,* 280; 1 *Green's Chan.* 305; 4 *Con. Eng. Chan.* 641; 1 *Ibid,* 480; 1 *Paige,* 20, 24; 4 *Mad.* 186; *Calvert on Parties,* 184.

2. The receivers of the Morris Canal and Banking Company are necessary parties.

*Elmer's Dig.* 32; 19 *Vesey,* 615; 1 *Con. Eng. Chan.* 410; *Calvert on Parties,* 110; 18 *Vesey,* 424; 4 *Vesey,* 387; *Mitford's Pleading,* 66; 1 *Mer.* 361; 1 *Vesey and B.* 545; 2 *Brown's C. C.* 276; 2 *Con. Eng. Chan.* 501; 10 *Ibid,* 75; 12 *Vesey,* 58; 2 *Dickens,* 738; 4 *Mad.* 171; 4 *Con. Eng. Chan.* 327; 6 *Mad.* 170.

3. Samuel Merrill, the president of the State Bank of Indiana, the last mortgagee, is a necessary party.

3 *John. Chan.* 459; *Halst. Dig.* 481; 3 *Vesey,* 314; 2 *Bro.* 276; 4 *John. Chan.* 605; 11 *Wheaton,* 604; *Cooper's Eq. Pl.* 33, 34; *Story's Eq. Pl.* 74, 75; *Mitford,* 144.

For the complainant it was insisted—

1. That the *cestui que trusts* are not in all cases essential parties. The court will look at the nature of the contract, at its character, at the number and situation of the parties in in-

[Willink v. The Morris Canal and Banking Co.]

terest. The mortgagee, by the terms of this contract, has entire control of the mortgage. He represents the lenders. It is not the case of an ordinary trust.

2 *John. Chan.* 197, 238 ; 4 *Paige*, 34 ; *Cooper's Eq. Pl.* 40 ; 1 *Brown's C. C.* 101 ; *Calvert on Parties*, 124 ; 8 *Brown's P. C.* 146 ; 4 *Russell*, 372 ; 1 *John. Chan.* 349, 437 ; 11 *Vesey*, 429 ; *Story's Eq. Pl.* 150, 191 ; 3 *Vesey*, 560 ; 3 *P. W.* 32 ; 3 *Vesey*, 76 ; 1 *Sch. and Lef.* 176 ; 4 *Mad.* 186.

2. The receivers are not necessary parties. They have no interest, legal or equitable, in the property. They cannot redeem. They may defend in the name of the company. They were appointed after the decree *pro confesso*. The appointment of an assignee *pendente lite*, will not stop or vary a suit in equity : *Story's Eq. Pl.* 150, 281.

The receivers are chargeable with notice, and should apply to be heard if they desire it : 5 *John. Chan.* 89 ; 1 *Ibid*, 580 ; *Story's Eq. Pl.* 76.

3. At this stage of the cause, the objection that Samuel Merrill is a necessary party, cannot be sustained. The answer denies that the complainant's mortgage covers the property included in the Merrill mortgage. If so, he is not a necessary party.

The court, after argument, overruled all the objections for want of parties, and directed the cause to proceed. The cause thereupon came on to be heard upon the pleadings and proofs.

For the complainant, it was insisted, that the complainant's mortgage was a lien upon the entire canal, with its appendages. It was so intended by the parties, and the mortgage by its terms, covers the whole work. The company had no power to mortgage a part of the canal ; the authority given by the act is to mortgage the canal, with its privileges, appendages, and chartered rights, as one entire thing. The chartered rights cannot be divided ; it was never so designed by the legislature, nor can the canal be used advantageously if divided, or any part of it

be held without the chartered rights. If the land at the date of the mortgage was not conveyed to the company, the right to acquire it was vested in them by the survey. Having the right to the title, and the authority to mortgage, the incumbrance is valid, though the title to the land was not vested in them. The mortgage is not upon the land, but upon the canal and its appendages.

Upon the same principle, the Pompton feeder, though the title to the property was acquired, and the work constructed after the mortgage, must pass as an appendage of the canal. If not, the whole work in the hands of the mortgagee might be rendered utterly valueless.

The canal company, and those claiming under them, are estopped from setting up, that the mortgage does not cover the entire canal with all its appendages. The mortgage deed in terms, conveys the whole, and they are by it estopped from denying that they had title at the date of the mortgage. *Coke Litt.* 476; 6 *Mod.* 258; 12 *John.* 201; 1 *John. Cas.* 90; 13 *John.* 316; 3 *P. W.* 371; 2 *Mod.* 115.

The mortgages to Indiana are not valid; the debt arose from the canal company trafficking in the Indiana bonds; the charter gives them no authority for that purpose.

These mortgages, moreover, were given not to secure a loan, but a pre-existing debt, and at a time when the company was insolvent; they are therefore void by the statute. *Elmer* 32, sec. 2.

There should be a decree for the sale of the canal, with its appendages and chartered rights—of all the property covered by the mortgage. The act under which the loan was made and the mortgage given, declares that the security shall be by way "of mortgage." This gives to the mortgagee all the rights that any other mortgagee would have. It necessarily involves a power to sell. The mortgage will have all the incidents pertaining to a mortgage at common law. An authority in the court, to direct a sale of the mortgaged premises, by virtue of the mortgage, is necessarily involved.

[Willink v. The Morris Canal and Banking Co.]

For the defendants. The validity of the defendants' mortgages are not impeached by the bill, nor in any way brought into question by the pleadings. No usury is charged, no insolvency of the company. Had these charges been made in the bill, the defendants would have had the benefit of their answer. Of this they cannot be deprived, nor can the complainant go into proof of matters not charged in the pleadings. 9 *Con. Eng. Chan.* 409; 2 *Mad. Chan.* 438; 12 *Vesey*, 477; 3 *Swans.* 471; 2 *Ball and B.* 49; 6 *John.* 543, 559.

The complainant's mortgage does not cover that part of the canal lying between Newark and Jersey City. In terms, it covers only so much as was then laid out, and in the course of completion. The land over which the canal was constructed, between Newark and Jersey City, had not been purchased. The route had been surveyed, but a part of it was subsequently changed, and the laying out was not completed until the survey was filed in the secretary of state's office. They had no title to the land. A title not in *esse* at the time, will not pass by deed. If there be a warranty, it may operate at a conveyance, by way of estoppel.

The Pompton feeder, six miles in length, is not embraced in the mortgage, no reference whatever is made to it. Authority to charge tolls upon that feeder, was conferred upon the company by an act passed on the fifth of March, eighteen hundred and thirty-six, subsequent to the date of the complainant's mortgage.

Nor does the mortgage embrace the wharf or pier at Jersey City. It appears by the minutes of the company, that the pier was not originally contemplated by the company. It is not necessarily a part or an appendage of the canal, but a distinct and independent work.

The acknowledgment of the complainant's mortgage is defective. The New-York commissioner had no authority to take the acknowledgment. The president of the company, who made the acknowledgment, resided at the time in New-Jersey : *Elmer's Dig.* 83, sec. 5; *Ibid*, 89, sec. 1; *Cowper*, 26.

The mortgage is not duly recorded. The act authorizing the mortgage, requires it to be recorded in the office of the secretary of state; but it did not repeal pre-existing laws, which require all mortgages to be recorded in the counties where the land lies.

The title to land passes by that mortgage, and it should have been recorded in each of the counties through which the canal passes.

The repeal of existing statutes by implication, is not favored. It can only be by necessary implication : 19 *Viner*, 525, pl. 132 ; 6 *Bac. Ab.* " *Statute*," *D. ;* 11 *Rep.* 63 ; *Dyer*, 343—7 ; 1 *Blac. Com.* 89 ; 9 *Cowen*, 437 ; *Dwarris on Stat.* 674.

A registry not authorized, or made upon a defective acknowledgment, is not constructive notice of the existence of a mortgage : 1 *John. Chan.* 300 ; *Halst. Dig.* " *Mortgage*," 280, 1 ; 1 *John.* 390 ; 1 *Scho. and Lef.* 157 ; *Sugden on Ven.* 527 ; 2 *Binney*, 40.

There was no actual notice. The agent of the defendants denies all knowledge of the execution of a mortgage upon that part of the canal between Newark and Jersey City. The notice must be clear and undoubted, and according to the fact : 2 *Sugden on Ven.* 223, 4.

There is no estoppel. Unless there be a warranty express or implied, the estoppel does not operate. There is here no warranty. The word *give* implies a warranty, but the word *grant* does not : 14 *John.* 193 ; 7 *Greenleaf*, 96 ; 5 *Greenleaf*, 227 ; 4 *Wendell*, 622 ; 7 *John.* 258 ; 4 *Cruise's Dig.* 295 ; 2 *Caine's C. E.* 188 ; 2 *Binney*, 95 ; 8 *Paige*, 861 ; 4 *Cowen*, 599.

The court of chancery has no power to decree a sale of the canal. The act authorizing the mortgage gives no such power. None exists at the common law, independent of the act. At the common law the company might have mortgaged the canal, but no sale could be made under it. The only remedy would be by sequestration. The mortgagee might be put in possession of the rents and profits, or a receiver might be appointed by the court : *Saxton*, 545 ; 4 *Vesey*, 430, note *a*, ; 32 *Eng. Com. Law*, 194 ; 13 *Serg. and R.* 210.

[Willink v. The Morris Canal and Banking Co.]

THE CHANCELLOR. The original act incorporating the Morris Canal and Banking Company, was passed on the thirty-first of December, eighteen hundred and twenty-four. The object of the incorporation was to construct a canal from the Delaware river at Easton, to the tide waters of the Passaic at Newark. The capital was fixed at one million of dollars, and the other provisions of the act were such as are usual and necessary for carrying out the object. By a subsequent act, passed the twenty-sixth of January, eighteen hundred and twenty-eight, power was given to extend the canal from Newark to the Hudson river. After this work had been progressed in, like most other undertakings of the like character, it was ascertained that the cost would exceed the estimated sum; that it would be necessary to borrow money to complete it. The first act authorizing the borrowing of money, was passed on the twenty-third of February, eighteen hundred and twenty-nine. It authorized the company to borrow five hundred thousand dollars, and to issue therefor their post notes at six per cent, and to secure the same by an assignment, conveyance or transfer of the canal, with its appendages and chartered rights. It is understood this money was borrowed under the act, but has since been repaid, and no question under it has arisen or can arise. It is observable that no further loans were made under this act, but on the twenty-eighth of January, eighteen hundred and thirty, a further act, varying the provisions of the former on this subject, was passed, not limiting the sum, but authorizing the company to borrow such sum as should appear to the board of directors proper and necessary. For securing the amount so borrowed, with interest, the company was authorized to pledge or hypothecate by way of mortgage, trust or otherwise, howsoever, the Morris Canal, with all its privileges, appendages and appertenances, and all the property and chartered rights of the said company. In case of default in payment, authority was given by the said act, for the person or persons making such loan, by due process of law, to acquire and have and hold, use and enjoy the said canal, with its appendages and appertenan-

ees, and the property of the company, and take and receive the tolls, rents, issues and profits thereof, during the whole residue of the term for which the company was chartered or incorporated, in as full and ample a manner as the stockholders of the company might enjoy the same, subject to the restrictions contained in the charter. It is under this, act that the loan was made, on which the controversy in this cause arises. On the twenty-ninth of March, eighteen hundred and thirty, a few months after the passage of the last named act, this company, through the agency of the complainant, effected a loan at Amsterdam, in Holland, of seven hundred and fifty thousand dollars, at five per cent, payable at a distant day, and gave as security, a mortgage upon the canal, its appendages and chartered rights, under and in conformity to the provisions of the act last mentioned. The complainant is a banker, residing at Amsterdam; he was the agent of the company in making the loan, and is declared by the mortgage to be the representative of the lenders also. The money thus loaned, was advanced accordingly, and the interest on the loan, which is made payable half yearly, has been regularly paid to the first day of January, eighteen hundred and forty-one, since which time nothing further has been paid.

The present bill is filed to foreclose this mortgage, and for a sale of the canal, The parties to the bill are, The Morris Canal and Banking Company, the State of Indiana, William C. Noyes, Thomas G. Talmadge, Henry Yates, Abraham Richards and David Selden. The five last named defendants are judgment creditors of the Morris Canal, and as such necessary parties. The State of Indiana is a mortgage creditor, and for a large amount. The bill sets out two mortgages given by the Morris Canal to the State of Indiana; one of the sixth of October, eighteen hundred and forty, on the canal from Newark to Jersey City, to secure the payment of one hundred and ninety thousand dollars, and another of the seventh of October, eighteen hundred and forty, on the entire canal, to secure the payment of nine hundred and sixty thousand dollars. To this bill

none of the defendants have appeared except the State of Indiana. As to the remaining defendants, a decree pro confesso was signed on the twenty-fifth of January, eighteen hundred and forty-two.

The State of Indiana has filed an answer, and sets up several grounds of objection to the complainant's action. This answer, among other things, discloses two other mortgages, about which nothing is said in the bill, made by the company to Samuel Merrill, president of the State Bank of Indiana, in trust for the State of Indiana, for a large amount, to secure a debt due to the said State, which covers a pier or wharf belonging to the company, at Jersey City. Both of these mortgages bear date the tenth of December, eighteen hundred and thirty-nine, and it is stated by the defendants are for the same debt, and that the last was given only to cover an omission which was made in the drawing of the first.

The cause was brought to a hearing upon the answer filed by the State of Indiana, and upon the depositions and exhibits taken and marked in the cause. The complainant and the State of Indiana are therefore the only parties litigating here; the one representing the loan of seven hundred and fifty thousand dollars, made in the year eighteen hundred and thirty, and the other the mortgages made by the company for very large sums in the year eighteen hundred and forty.

A preliminary objection is taken by the defendants to this cause being heard, for the want of parties, which objection must first be considered.

And first, it is insisted that the complainant, being a trustee or agent only of the lenders, the lenders themselves, who are the *cestui que trusts*, are necessary parties. The undeniable general rule in equity is, that a nominal trustee cannot bring a a suit in his own name alone, but must associate with it the names of the persons having the beneficial interest. The cases cited on the argument fully establish this proposition, and it will be seen by the case of *Stillwell* v. *McNeely*, 1 *Green's Chan.* 305, that the rule is recognized in this court; but it is there

34

stated·that the·court will hold, as they certainly must, a discretionary power to dispense with that necessity, in cases of great inconvenience, or where unnecessary expense would be incurred. In *Van Vechten and Sebring* v. *Terry and others*, 2 *John. Chan.* 197, on a bill for foreclosure, a nominal trustee was held to be a sufficient party defendant, because the real owners were two hundred and fifty. This was to avoid expense.

There are two reasons why I deem it unnecessary that any other persons should be made complainants. The first is, the great inconvenience to which it would subject these parties. The character of this transaction is from its very nature, and the common course of business, well understood. The complainant, being a banker of extensive money transactions, makes this loan for the company, by opening books at Amsterdam, by which all that choose may come in and subscribe such sums as they think proper, according to the published terms. This is the common course of business, and there is no doubt from the papers that this was the course pursued here. The complainant does not appear to have lent the money himself, but to have been the negociator and trustee. These subscriptions may be more or less, but from the large sum loaned is likely to embrace a great number of persons. These persons, scattered over the world, it would be almost impossible for the complainant to find out. The true additional parties, if any, would be the owners of the stock at the time of filing the bill, and if dead, their representatives must be substituted.

To require the complainant to take such a course, would be almost a denial of the aid of the court in the recovery of his money. I think it may well be classed among those cases which are excepted out of the general rule, from the great inconvenience which its enforcement would bring upon the parties. Nor does the answer made by the defendants' counsel to this view of the case, that this state of facts are not shown in the bill, sufficiently meet it. The character of the transaction is there stated. It appears in the correspondence between the

[Willink v. The Morris Canal and Banking Co.]

parties. It is in fact shown on the face of the mortgage itself, and the court should not shut its eyes against the knowledge we all possess of the common course of events, and particularly of the course of business among men. Upon the case, as stated in the bill, every man acquainted with the manner of transacting business of this kind, will perceive, that here was a stock opened, and that all who chose came in and subscribed.

The second reason against sustaining this objection, arises from the face of the mortgage itself. It is not improbable that the intelligent gentleman at the head of the Morris Canal Company at the time of the giving of this mortgage, (Mr. Colden,) and who was also an able lawyer, might have anticipated the embarrassment that would grow out of having any thing to do in this business with the lenders of the money, and it is therefore particularly agreed, that the complainant shall represent the lenders. The company dealt only with the complainant. He is called "the agent and trustee of the several subscribers to the loan," and throughout the writing is spoken of as Wilhem Willink, junior, "representing the said lenders." It was, therefore, a part of the original contract, that these lenders should in this transaction be represented by the complainant, and by him alone. To oblige him now, in seeking to recover this money again, in the face of this agreement, to come before the court in the names of all the lenders, would appear to me not only unnecessary, but unjust.

It was, in the next place, insisted by the defendants, that the receivers of the Morris Canal are necessary parties.

After the decree *pro confesso* was taken against the Morris Canal and Banking Company, it appears from the evidence in the cause, receivers were appointed for that company, under the act, entitled, "An act to prevent frauds by incorporated companies." A number of authorities were cited on the argument, clearly showing, that in bankruptcy cases the assignee is a necessary party; and the same rule obtains in the discharge of insolvent debtors. In these cases, however, the property of the bankrupt or insolvent passes to the assignee and vests in him.

The title is in the assignee, and he must be brought before the court. The provisions of the statute under which these receivers are appointed, are peculiar. *Elmer's Dig.* 32. The property of the company does not vest in the receivers, nor does the appointment of receivers necessarily put an end to the corporation. The receivers have the sole power over the corporation; they are substituted in the place of the directors and managers, but for the purpose of settling up and closing the affairs of the company. The title to the property is not changed, but a power only is delegated to the receivers to take charge of it and sell it. These receivers, too, may bring suits in their own name, and for aught I see, in the name of the corporation, should they prefer it; and if so, they may defend a suit in the name of the corporation. As a decree *pro confesso* in this cause was taken against this company before the receivers were appointed, by which the right of the complainant to recover is ascertained, and the amount only remains to be settled; and more especially, as the corporation is not put an end to by this act of the court, and the receivers may appear and controvert the amount, in the name of the corporation, I see no good reason why the proceedings in this cause should be delayed to bring them before the court.

It must be remembered too, that this application comes from the State of Indiana; the receivers do not apply or desire to be made parties. If the receivers were asking permission to be substituted as defendants with a view of setting up a defence, I should not hesitate to admit them in any stage of the proceedings, and if a decree had not been entered before their appointment, it would be a safe course to require it to be done. In the absence, however, of any such application on the part of the receivers, and with a decree entered against the company before their appointment, it is in my opinion unnecessary that they should be brought into court at the instance of a third party.

The third defect alleged by the defendant, is the omission as a party, of Samuel Merrill, president of the State Bank of Indiana, the trustee of the State of Indiana. The mortgages made

[Willink v. The Morris Canal and Banking Co.]

to Merrill are not on the canal, but on a pier or wharf at Jersey City, which, according to the answer, are in no wise affected by the complainant's mortgage. This objection, therefore, cannot be sustained, at all events in this stage of the cause, for if the complainant's mortgage does not cover that pier, then certainly Merrill would be an improper party.

The objections, therefore, for want of parties, are overruled; which leads to the consideration of the cause on its merits.

The first and the great question is, does the complainant's mortgage cover the canal from Newark to Jersey City? This part of the canal was surveyed, (from the evidence of Robert Gilchrist, who was for many years cashier of the company, and probably has as much knowledge of its affairs at that time as any person,) but not excavated, nor were the lands purchased until after the mortgage to the complainant was given. The survey, although made prior to giving the complainant's mortgage, was subsequently varied. Charles T. Shipman also says the route was surveyed before the mortgage. Did the mortgage, then, cover this part of the route? The act athorizing the extension of the canal to Jersey City, was passed before the date of complainant's mortgage, and the extension was built under the same regulations with the other parts of the canal. It became, in fact, part and parcel of the entire canal. It is declared in the act itself, that for the purpose of making this continua-- tion or extension, the company shall have all the rights, powers and privileges granted by the original act, and be subject to all the restrictions, limitations, conditions and provisions in that act contained, in the same manner and to the same effect as if the company had been originally authorized by the said act "to construct a canal or artificial navigation to connect the waters of the Delaware river near Easton, with the waters of the Hudson at or near the city of Jersey. It was designed to make it the same as if the original charter had been to construct the canal to the Hudson instead of the Passaic. After this exten- sion act, the Morris Canal became, in fact, a canal from the Delaware to the Hudson, and whenever spoken of after that

34*

time, must be so considered.    The acts authorizing the borrow-
ing of money, were not passed until after the act authorizing
the extension, and therefore when the Morris Canal is there
spoken of, it can, upon no fair construction, mean any thing
short of the entire canal to the Hudson.    After this act, the ca-
nal to the summit, to Morristown, or to any other intermediate
point, might with the same propriety be termed the Morris
Canal, as that part between the Delaware and the Passaic.
The act clearly contemplated a mortgage on the entire canal,
with its appendages and chartered rights.    We must then see
what was actually covered by the terms of the mortgage.    The
language used in the granting part is "all and singular the
Morris Canal, so called, being the canal authorized by the laws
of the said state of New-Jersey, as the said canal has been laid
out through the several counties of Warren, Sussex, Morris,
Essex and Bergen, in the said state, and is now in a course of
completion, from the Delaware to the Hudson river."    Can any
language be plainer?    It was the clear intention of the parties
to mortgage the entire canal from the Delaware to the Hudson,
and it can mean nothing else.    If any doubt remained on this
question, the correspondence between the complainant and the
president of the company at the time would conclusively set-
tle it.

The land through which the canal runs was not conveyed
to the company at the time this mortgage was given, and there-
fore it is earnestly insisted that it cannot pass by it.    There
does indeed appear some inconsistency at first view, that it
should pass, and yet can it be possible, that if on the line of the
route at any place, it should turn out that a deed was obtained
for a piece of land since the execution of the mortgage, that
such part of the canal is not embraced within it?    This would
put an end to all advantage to be derived from the canal; a
purchaser must have the entire property or it can be of no use.
I am satisfied, that it is immaterial whether the title passed to
the company before or after the date of the mortgage.    The
law had been passed authorizing the extension to Jersey City,

and the route had been surveyed, although that route was afterwards changed. The entire canal was, and was so stated in the mortgage to be, only in a course of completion, and in that condition the mortgage was authorized by law. By the charter of the company, this mode of obtaining title, by purchasing the fee of the lands, is not contemplated, but a mode is pointed out, by which, after an assessment by commissioners, the company acquire a right, not to the land, but to the use of it so long as it is used for a canal. The feeder too, must pass in the same way, for the canal could be of no service to a mortgagee without water, and this feeder was built as part and parcel of the canal, and is an appendage to it. The wharf or pier at Jersey City, if, as I suppose, it was constructed as an appendage to the canal, must pass upon the same principle. The language of the mortgage is very comprehensive. The language is, "together with all and singular the dams, aqueducts, locks, planes, culverts, bridges, towing-paths, embankments, basins, wharves, docks, waters, water-courses, machinery, privileges, appendages and appertenances thereto belonging or appertaining," evidently meaning to embrace the entire canal and every thing connected with it.

I deem it unnecessary to examine whether the mortgage was acknowledged or recorded according to law. That can only be important on the question of notice, and from the evidence, the State of Indiana had sufficient notice in fact and independent of the record. Milton Stapp, who was the fund commissioner of the State of Indiana at the time the mortgages were given to that State, and who negotiated much of the business between that State and the Morris Canal Company, upon his own examination, admits he was well acquainted at that time with the debt of seven hundred and fifty thousand dollars to the complainant, and that there was a mortgage from Easton to Newark to secure it. But he says he did not examine the record, to ascertain its contents, although it was in the office of the secretary of state at Trenton, where it was recorded, but he relied on the statement made to him by the president. This was notice

enough, and if the agent did not think it worth while to look at the instrument for himself, he cannot complain, nor those he represents, if they should be mistaken in its character or purport. With the information given to this agent, the defendant cannot set up, with any fair pretence, a want of notice of the complainant's mortgage. The truth is, the existence of this mortgage was notorious, and it has received the common appellation of the Dutch mortgage.

Again, the defendants insist that no decree for sale can be entered in this case, and that the only redress for the complainant is, by sequestration of the tolls and rents and profits. Upon a common law mortgage, given by the company, this may possibly be true, but this is a statute mortgage, deriving its construction from statute alone. It goes beyond a common law mortgage in transferring the chartered rights. A mortgage of this character is a novelty with us, and as was to be expected, brings with it much discussion and discrepancy of opinion on its true construction. The act authorizes the company to mortgage the entire canal, with its appendages and appertenances, and I cannot presume that the legislature designed anything else than to invest the mortgagee with all the power and authority incident to an instrument of that kind. Nor do I see that a contrary construction could be of any advantage to the defendants, while it certainly would greatly prejudice the complainant.

If, however, I should mistake the rights of the complainant under this mortgage, upon a sale the purchaser will acquire nothing beyond what he is entitled to by the terms of the instrument, which will always be an open question for any tribunal before whom the trial of the right to the property may come.

So far as the complainant has attempted to impeach the defendants' mortgages, I do not enter into it, because they are in no way called in question by the pleadings. There is no doubt the State of Indiana has a large and meritorious demand against this Company, and which I should be very glad to see paid.

There is no justice, however, in their being paid at the expense of the complainant. His mortgage is of long standing, was fully known to all the parties, and should constitute the first lien on the property. After that is paid, the claim of the State of Indiana is the next in order.

If the complainant's mortgage covers the property contained in that to Samuel Merrill, as it appears to me it does, then he should have been made a party. But inasmuch as it involves a very small part of the property, (a dock or pier,) and he was a mere trustee for the State of Indiana, which State is the party defendant here, and more especially as Merrill not being made a party, his right to redeem will not be barred by any decree which may be entered, I deem it unnecessary to delay the complainant by bringing him before the court.

The complainant, therefore, is, in my opinion, entitled to a decree for a sale of the entire canal, with the feeders, docks and appendages belonging to it, and in case it shall bring more than sufficient to satisfy his demand, then the State of Indiana and the other parties holding subsequent liens, should be paid in the order of their priority.

There must be a reference to a master in the usual form.

The interlocutory order was as follows:

" This cause coming on to be heard at a court of chancery, held at Trenton, in the state of New-Jersey, in the term of July, in the year of our Lord one thousand eight hundred and forty-three, in the presence of Asa Whitehead, solicitor, and of counsel with the complainant, and of Benjamin Williamson, solicitor, and of counsel with the State of Indiana, one of the said defendants; the complainant's bill having heretofore been ordered to be taken as confessed against the Morris Canal and Banking Company, William C. Noyes, Thomas G. Talmadge, Henry Yates, Abraham Richards and David Selden, the other defendants; and the bill of complaint of the said complainant, and the answer of the State of Indiana to the same, and the

evidence, proof and exhibits in the said cause having been read and heard, and the arguments of counsel on both sides having been heard, and time taken to advise thereon : And thereupon the chancellor is of opinion, and doth hereby declare, that the act of the legislature of the state of New-Jersey which authorized the giving of the complainant's mortgage, clearly contemplated and intended a mortgage on the entire canal with all its appendages and chartered rights, and that it was the intent of the parties to include in said mortgage the entire canal from the Delaware to the Hudson river, and that the said mortgage in its terms and provisions embraces the whole of the said canal to the Hudson river, and every thing connected with it, including the part then in a course of completion and not finished, together with the feeder which was built as part and parcel of the said canal and is an appendage to it, and the wharf or pier at Jersey City which was also constructed as an appendage to the said canal: And the chancellor being further of opinion, doth declare, that the State of Indiana, at the time of the execution of the said bonds and mortgages of the said Morris Canal and Banking Company to the said State of Indiana, had due notice of the existence, nature and extent of the mortgage of the said complainant ; and that, under the above recited act of the legislature, the complainant is entitled to have the amount due on his said mortgage raised by sale of the whole of the said mortgaged premises, including the chartered rights and privileges of the said Morris Canal and Banking Company, according to the prayer of his bill ; and that his said mortgage is a first lien, and first to be satisfied out of the said premises, and that the balance, if any, be appropriated to the payment of the mortgages of the said State of Indiana: Whereupon it is now, on this fourteenth day of October, in the year of our Lord one thousand eight hundred and forty-three, by his excellency William Pennington, governor and chancellor of the state of New-Jersey, ordered, that it be referred to Theodore Frelinghuysen, junior, one of the masters of this court, to ascertain and report the

amount due to the said complainant, upon the mortgage held by him upon the premises mentioned and described in the said bill of complaint; and also the amount due, if any thing, to the said State of Indiana, upon her several mortgages—and to report accordingly; and that he make his report with all convenient speed."